1
2
3
4
5
6

**\*\* E-filed April 28, 2011 \*\***

7                                    NOT FOR CITATION

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                    SAN JOSE DIVISION

11    RICHARD R. LANE,                          No. C10-05779 HRL

12                    Plaintiff,               **ORDER GRANTING DEFENDANTS'**
                                               **MOTION TO DISMISS**
13         v.

14    ANNE STAUSBOLL, et al.,                   **[Re: Docket No. 7]**

15                    Defendants.
      _____/

16                                    **INTRODUCTION**

17         Plaintiff Richard Lane ("Lane"), a former lecturer at San Jose State University ("SJSU")

18    filed this action against Anne Stausboll ("Stausboll"), the current CEO of the California Public

19    Employees' Retirement System ("CalPERS"), and Rob Feckner ("Feckner"), the current President

20    of the CalPERS Board of Administration (collectively, "Defendants"). He is suing them under 28

21    U.S.C. § 1983 for violation of his United States Constitutional rights; and for negligence, negligent

22    supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress

23    under California law. Docket No. 1 ("Complaint").

24         Defendants moved to dismiss Lane's complaint on numerous grounds. Docket No. 7

25    ("MTD"). First, they argue that Lane's § 1983 claims are barred by res judicata and by the statute of

26    limitations; that Defendants are protected by official immunity; that § 1983 does not provide a

27    remedy for an alleged misapplication of state law; and that there is no basis for holding Defendants

28    personally liable under § 1983. Id. Second, they argue that federal-subject matter jurisdiction over

**United States District Court**
For the Northern District of California

1   Lane's state law claims does not exist because Lane failed to first file these claims with the

2   California Victim's Compensation and Government Claims Board. Id. They also argue that Lane's

3   intentional infliction of emotional distress claim fails because he does not allege that Defendants'

4   conduct was "outrageous." Id.

5   Lane opposed the motion. Docket No. 10 ("Opp'n"). Oral argument was heard on March 8,

6   2011. For the reasons set forth below, the Court GRANTS Defendant's motion.[1]

7   **BACKGROUND**

8   This case involves a long-standing dispute between Lane and CalPERS concerning the

9   amount of his pension. The California Court of Appeal, Sixth Appellate District, previously

10   described some of the relevant background:

11   The CalPERS retirement fund is established as a trust, administered in accordance
    with the provisions of the Public Employees' Retirement Law ([Cal. Gov't Code] §
12   20000 et seq., hereafter "PERL"), solely for the benefit of the participants. ([Cal.
    Gov't Code] § 20170.) The retirement system is funded by contributions from
13   employers and employees, calculated as a percentage of an employee's compensation.
    (Hudson v. Board of Administration (1997) 59 Cal.App.4th 1310, 1316.) A member's
14   retirement benefits are based on their years of service within the system, final
    compensation and age at retirement. (Ibid.)
15

16   From 1986 to 2002, Lane worked as a lecturer at San Jose State University (SJSU) on
    a temporary basis. Lane retired from that employment on May 30, 2002, and elected
17   to have his final compensation calculated on the basis of what he earned over the
    prior 12-month period, i.e., May 31, 2001 to May 30, 2002. Lane's final
18   compensation for that period was ultimately determined to be $70,707.60. [Footnote
    omitted.]

19   Over the 12-month period before his retirement, Lane taught classes in three
    departments under three separate part-time contracts. These contracts were effective
20   from August 23, 2001 to May 29, 2002 and comprised the fall 2001 and spring 2002
    semesters at SJSU. Official dates of instruction for the fall 2001 semester consisted of
21   August 23, 2001 to December 11, 2001 and for the spring 2002 semester, January 23,
    2002 to May 14, 2002, with a one week examination and grading period at the end of
22   each semester.

23   Consequently, Lane actually worked as an instructor for seven and a half months of
    the 12 months immediately preceding his retirement. However, Lane's salary was
24   paid to him in 12 monthly installments. During the four and a half months when Lane
    was not teaching, he was able to draw unemployment benefits. [Footnote omitted.]
25

26   On May 18, 2005, Lane wrote to CalPERS requesting that his retirement benefit be
    calculated by dividing the amount he earned over the 12-month period leading up to
27   his retirement by the number of months he actually worked, i.e., seven and a half

28   ─────────────
    [1] Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, all parties have expressly consented that all
    proceedings in this matter may be heard and finally adjudicated by the undersigned.

**United States District Court**
For the Northern District of California

months, rather than 12 months. CalPERS rejected Lane's request and, citing [Cal. Gov't Code] section 20035(a), stated that it would calculate his average final compensation by dividing Lane's final compensation of $70,707.60 by 12. Accordingly, on August 8, 2005, CalPERS notified Lane that his average monthly payrate for the 12-month period before his retirement was $5,892.30.

Lane appealed CalPERS' decision to the CalPERS board of administration, and his appeal was heard by an administrative law judge (ALJ). The ALJ denied Lane's appeal in a proposed decision, which was adopted by the CalPERS board of administration. The CalPERS board of administration denied Lane's subsequent request for reconsideration.

Lane filed a petition for writ of mandate and administrative mandate pursuant to Code of Civil Procedure sections 1085 and 1094.5 seeking to compel CalPERS to calculate his retirement benefit by dividing his final compensation by the number of months he actually worked during the 2001-2002 academic year, rather than the 12 months prior to his retirement date. The trial court denied the petition and entered judgment in favor of CalPERS. Lane timely appealed.

Lane v. California Public Employees' Retirement System, No. H031345, 2008 WL 2352480, at *1-3 (2008). The California appellate court then went on to affirm the trial court, concluding that "CalPERS has properly calculated Lane's retirement benefit in accordance with Government Code section 20035, subdivision(a) . . . ." Id. at *1. The California Supreme Court summarily denied Lane's petition for further review.

According to the complaint in this action, Lane next "wrote to CalPERS asking for an adjustment to his final compensation on the basis of Government Code § 31461.3(a)," which he argues requires CalPERS to calculate his retirement benefit based on the seven and a half months he actually worked during the 12 months preceding his retirement. Complaint at 4. He also sent a petition to the CalPERS Board of Administration seeking the same thing. Id. at 5. CalPERS's legal office responded that Government Code § 31641 was not applicable to Lane's situation. Id. Then, in the summer of 2009, Lane filed another Petition for Writ of Mandate in state court. Id.; see Lane v. California Public Employees' Retirement System, No. 109CV144172 (2009). CalPERS demurred to Lane's Petition, and the Superior Court sustained it without leave to amend. Id.

Now Lane has filed in federal court. He claims that under California Government Code § 31461.3(a) CalPERS is "required to use actual time worked when calculating retirement benefits for, among others, both CalPERS and [California State Teachers' Retirement System] members,

United States District Court
For the Northern District of California

who work less than a full calendar year."[2] Complaint ¶ 3. Despite this provision, "Defendants have refused requests by [Lane] to calculate his final compensation on the basis of the 7.5 months he actually worked in the 12 months preceding his retirement from [SJSU]." Id. This refusal, Lane alleges, ignores Cal. Govt. Code § 31461.3(a) and violates his right to due process under the Fifth and Fourteen Amendments to the United States Constitution. Id. ¶¶ 3, 11, 13.

**DISCUSSION**

A. Res Judicata

As an initial matter, Defendants argue that Lane's § 1983 claims are barred by the doctrine of res judicata. MTD at 7-10.

"The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies." In re Int'l Nutronics, Inc., 28 F.3d 965, 970 (9th Cir. 1994) (citing In re Jenson, 980 F.2d 1254, 1256 (9th Cir. 1992). "'Res judicata bars all grounds for recovery that *could have been asserted,* whether they were or not, in a prior suit between the same parties on the same cause of action.'" Id. (quoting Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir. 1992)) (emphasis in original). Thus, it "precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief.'" Mycogen Corp. v. Monsanto Co., 28 Cal.4th 888, 897 (2002) (quoting Weikel v. TCW Realty Fund II Holding Co., 55 Cal.App.4th 1234, 1245 (1997)).

Its purpose is "to secure the peace and repose of society by the settlement of matters capable of judicial determination." Southern Pacific R. Co. v. United States, 168 U.S. 1, 49 (1897). Accordingly, "[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the

---

[2] Cal. Gov't Code § 31461.3(a) provides in relevant part: "The average compensation during any period of service as a member of the Public Employees' Retirement System . . . shall be considered compensation earnable by a member for purposes of computing final compensation for that member provided: (1) The period intervening between active memberships in the respective systems does not exceed 90 days, or six months if Section 31840.4 applies[; and] (2) He or she retires concurrently under both systems and is credited with that period of service under the other system at the time of retirement."

4

United States District Court
For the Northern District of California

1   end that rights once established by the final judgment of a court of competent jurisdiction shall be

2   recognized by those who are bound by it in every way, wherever the judgment is entitled to

3   respect." <u>Hart Steel Co. v. Railroad Supply Co.</u>, 244 U.S. 294, 299 (1917) (citing <u>Kessler v. Eldred</u>,

4   206 U.S. 285 (1907)).

5        "[A] federal court must give to a state-court judgment the same preclusive effect as would be

6   given that judgment under the law of the State in which the judgment was rendered" under the

7   Constitution's Full Faith and Credit Clause and under 28 U.S.C. § 1738. <u>Migra v. Warren City</u>

8   <u>School Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984). Accordingly, a court should apply California law

9   concerning claim preclusion to a California judgment. <u>See id.</u>; <u>Holcombe v. Hosmer</u>, 477 F.3d 1094,

10   1097 (9th Cir. 2007) (applying Nevada law to determine preclusive effect of a Nevada state court

11   judgment).

12        Under California law, for res judicata to bar a subsequent action, "three requirements have to

13   be met: (1) the second lawsuit must involve the same 'cause of action' as the first one, (2) there

14   must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded

15   must itself have been a party, or in privity with a party, to that first lawsuit." <u>San Diego Police</u>

16   <u>Officers' Ass'n v. San Diego City Emps.' Ret. Sys.</u>, 568 F.3d 725, 734 (9th Cir. 2009)

17   (summarizing California law).

18        1.  <u>Same Cause of Action</u>

19        To determine whether prior proceedings involve the same claim or cause of action as the

20   current one, "California has consistently applied the 'primary rights' theory, under which the

21   invasion of one primary right gives rise to a single cause of action." <u>Kay v. City of Rancho Palos</u>

22   <u>Verdes</u>, 504 F.3d 803, 809 (9th Cir. 2007).  The Ninth Circuit has explained that under this theory,

23        a cause of action is comprised of a primary right of the plaintiff, a corresponding
            primary duty of the defendant, and a wrongful act by the defendant constituting a

24        breach of that duty. The most salient characteristic of a primary right is that it is
            indivisible: the violation of a primary right gives rise to but a single cause of action . .

25        . . As far as its content is concerned, the primary right is simply the plaintiff's right to
            be free from the particular injury suffered.

26

27   <u>Maldonado v. Harris</u>, 370 F.3d 945, 952 (9th Cir. 2004) (quoting <u>Mycogen</u>, 28 Cal.4th at 904). In

28   other words, "if two actions involve the same injury to the plaintiff and the same wrong by the

**United States District Court**
For the Northern District of California

defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." San Diego Police Officers' Ass'n, 568 F.3d at 734 (quoting Eichman v. Fotomat Corp., 147 Cal.App.3d 1170 (1983)); see also Gamble v. General Foods, Corp., 229 Cal.App.3d 893, 898 (1991) ("[T]wo actions constitute a single cause of action if they both affect the same primary right.").

In his present complaint, Lane alleges that his § 1983 claims are based on CalPERS's alleged violations of his right to due process. Complaint ¶ 13 ("Specifically, this action challenges Defendants' denial of [Lane's] due process rights secured under the Fifth and Fourteenth Amendments to the United States Constitution . . . and 42 U.S.C.[] § 1983 . . . ."); see also id. ¶¶ 56, 59. His due process rights, in turn, were violated when CalPERS refused to calculate his pension according to what he believes is the appropriate statutory provision. Complaint ¶ 11 ("CalPERS'[s] refusal to apply [Cal. Gov't Code § 31461.3(a)) to calculate Lane's pension is the basis for his claim of a violation of his constitutional right to due process."), ¶ 21 ("[Lane] claims [that] CalPERS'[s] refusal to apply § 31461.3(a) or even have a hearing is a violation of his constitutional right to due process.").

His primary right, then, is his right to have his pension calculated according to law. Complaint ¶ 37 ("Due process protects fundamental rights, which for [Lane] is his right to a correctly calculated pension."). Lane appears to agree. Indeed, in his opposition he insists that his "primary right to receive a lawfully calculated pension" was violated in three ways: by CalPERS (1) "ignor[ing] statutory and case retirement law"; (2) "knowingly and willingly miscalculat[ing] [his] final compensation; and (3) underpay[ing] him monthly." Opp'n at 12.

However, Lane incorrectly argues that since he has "suffered three violations of his primary right, he has three causes of action." Id. He cites two cases for his assertion that "courts have long held that if there have been multiple distinct wrongs against one primary right, there are multiple causes of action, not one, but his reliance on those cases is misplaced. In Gamble, the plaintiff brought an action against her former employer for breach of an implied-in-fact contract to terminate her employment only for good cause and for breach of the implied covenant of good faith and fair

dealing. <u>Gamble</u>, 229 Cal.App.3d at 897. The appellate court upheld the lower court's ruling that the plaintiff's complaint was barred by res judicata, as she had lost a prior federal suit in which she alleged that her employment was terminated as a result of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. <u>Id</u>. at 896-97. "In both cases," the court explained, "the asserted primary right is the right to employment." <u>Id</u>. at 901.

And in <u>Branson</u>, an employee first unsuccessfully sued his employer for business-related torts and sought <u>statutory</u> indemnity from his co-defendant and employer under Corporations Code § 317. <u>Branson v. Sun-Diamond Growers of California</u>, 24 Cal.App.4th 327, 334-35 (1994). Later, the employee filed another action against his employer for <u>equitable</u> and <u>contractual</u> indemnity. <u>Id</u>. at 335. The trial court dismissed the second action based on res judicata, but the appellate court reversed because the employee's limited right to seek indemnity under Corporations Code section 317 did not involve the same primary right as a cause of action for equitable or contractual indemnity. <u>Id</u>. at 338, 343-44. In so ruling, though, the appellate court reaffirmed the established rule that the cause of action for purposes of the doctrine of res judicata "'is based on the harm suffered, as opposed to the particular legal theory asserted by the litigant,'" and so "'[e]ven where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.'" <u>Id</u>. at 340-41.

Indeed, the cases cited and discussed in <u>Branson</u> to illustrate the distinction between one cause of action versus two demonstrate that Lane only has a single cause of action. In <u>Slater v. Blackwood</u>, 15 Cal.3d 791, 795 (1975), a plaintiff who had been injured in an automobile accident lost an action against the driver and owner of the vehicle for damages under a statutory provision. The plaintiff later filed an action based on a negligence theory, but the court found the suit barred by res judicata because "'[t]he 'primary right' alleged to have been violated in the instant case is plaintiff's right to be free from injury to her person.'" <u>Id</u>. (citation omitted). In <u>Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.</u>, 5 Cal.4th 854 (1993), a contractor was owed money for its work on a construction project. <u>Id</u>. at 857. The attorney who had represented the contractor in connection with the project recorded a mechanic's lien but thereafter failed to serve a stop notice on the project's construction lenders and failed to file a complaint to foreclose the mechanic's lien. <u>Id</u>.

As a result of the attorney's omissions, the contractor was unable to collect the amount it was owed. Id. The contractor then filed a legal malpractice claim against its former attorney. Id. The attorney's professional liability insurance policy contained a provision limiting coverage to a maximum of $250,000 "for each claim" and further provided that, "[t]wo or more claims arising out of a single act, error or omission or a series of related acts, errors or omissions shall be treated as a single claim." Id. As such, the defendant insurance company argued that only one claim was being asserted, even though the contractor alleged two instances of legal malpractice. Id. at 858. Both the trial court and the appellate court concluded that the two acts of legal malpractice constituted separate claims, but the California Supreme Court reversed. Id. at 873. "These two acts of legal malpractice, the court ruled, deprived the client of only one primary right. The plaintiff 'had one primary right — the right to be free of negligence by its attorney in connection with the particular debt collection for he was retained. He allegedly breached that right in two ways, but it nevertheless remained a single right.'" Branson at 342 (quoting Bay Cities, 5 Cal.4th at 860).

Unlike the plaintiffs in those cases, the plaintiffs in Agarwal v. Johnson, 25 Cal.3d 932 (1979) and Craig v. County of Los Angeles, 221 Cal.App.3d 1294 (1990) had two causes of action. In Agarwal, the court distinguished between the plaintiff's rights against discriminatory employment practices under Title VII and his rights not to be defamed or intentionally inflicted with emotional distress. Agarwal, 25 Cal.3d at 955. And in Craig, the court distinguished between the primary right to be employed as a harbor patrol officer and the primary right to seek damages and past salary based on the defendants' wrongful conduct. Craig, 221 Cal.App.3d at 1301-02.

Here, as mentioned above, Lane's primary right is his right to have his pension calculated according to law. In his previous action, he argued that CalPERS should have calculated his pension according to Cal. Gov't Code § 20035(a). Now, he argues that CalPERS should have calculated his pension according to Cal. Gov't Code § 31461.3(a). Both claims relate to his single primary right.

Despite his assertion in his complaint that Defendants violated his right to a correctly calculated pension, he also contends in his opposition brief that he has "three primary rights: (1) his right to expect CalPERS to know and follow retirement law in full; (2) his right to have his final compensation calculated according to all applicable law; and (3) his right to receive a correctly

calculated fractional portion thereof as his monthly pension." Opp'n at 12-13. According to him, none of these three "rights" have been adjudicated since the "the only issue ever before a court was the use of '12 months' to calculate [his] final compensation, which has nothing to do with the instant case." Id. at 12.

But it has everything to do with this case. Lane's position here is "premised on a distinction without a difference." San Diego Police Officers' Ass'n, 568 F.3d at 736. In San Diego Police Officers' Ass'n, the plaintiff argued that its prior action involved claims that the defendant failed to fund a retirement system at the fixed rate agreed to in certain agreements, but its subsequent action involved claims that the underlying funding system created by one of those agreements was itself unlawful. Id. at 735. The Ninth Circuit found the plaintiff's distinction to be without merit:

> Although its claims in this action literally focus on the enactment of [the agreement at issue] and the funding levels it created, rather than on the question of [the city defendant's] compliance with those levels, they are nevertheless unquestionably "based upon [the city defendant's] failure to pay the amount annually determined by the [retirement system's] actuary and approved by the [retirement system's board] from 1996 to 2006." Whether that failure is framed in terms of not having funded [the retirement system] at the rate established by the [agreement at issue] or in terms of the enactment of [that agreement] as such, the alleged violation is the same: the level at which payments were made to [the retirement system] is claimed to have been impermissibly lower than that determined by the [the retirement system's] actuary.

Id.

Here, Lane unpersuasively tries to divide up his single primary right — his right to have his pension calculated correctly — into three smaller, "sub-rights." Nonetheless, the alleged harm to him is based on CalPERS's calculation of his pension using 12 months instead of 7.5 months, and this is exactly the issue that was taken up during the state proceedings. The fact that he now alleges that CalPERS needs to follow a different statutory provision which would result in its calculating his pension using 7.5 months does not give him a new primary right, especially when he could have raised this issue before. Robi v. Five Platters, Inc., 838 F.2d 318, 324 (9th Cir. 1988) ("California's 'primary rights' theory does not mean that different causes of action are involved just because relief may be obtained under . . . either of two legal theories." ) (internal quotation marks omitted).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    In sum, Lane has a single primary right, and it was adjudicated at the state level. Thus, for

2    res judicata purposes, the Court finds that the instant action involves the "same cause of action" as

3    that addressed in the prior state proceedings.

4        2.   Final Judgment on the Merits

5    As explained above, Lane has had an administrative hearing and state trial court proceedings

6    about whether CalPERS properly calculated his pension. The appellate court ruled on the issue, and

7    the California Supreme Court denied Lane's petition for hearing. There has been a final judgment on

8    the merits of this issue.

9        3.   Parties in Privity

10   In the state court proceedings, Lane proceeded against CalPERS. Here, Defendants are the

11   CEO of CalPERS and the President of the CalPERS Board of Administration. However, since their

12   liability would be derivative of CalPERS's liability, they are in privity with CalPERS, and they need

13   not have been a party to the state court proceedings. See Brinton v. Bankers Pension Services, Inc.,

14   76 Cal.App.4th 550, 557-58 (1999) (citing Sartor v. Superior Court, 136 Cal.App.3d 322, 326-328

15   (1982) (confirmed arbitration award finding corporation liable only for defective solar panel gaskets

16   barred subsequent action against corporation's employees alleging fraud and negligence for other

17   alleged construction defects); City of Los Angeles v. Superior Court, 85 Cal.App.3d 143, 154-155

18   (1978) (prior judgment in favor of county and city employees in federal civil rights action barred

19   action against both employees and the county and city seeking damages for conversion); Loughran

20   v. Reynolds, 70 Cal.App.2d 241, 244-245 (1945) (prior judgment in bankruptcy limiting plaintiff's

21   recovery against corporation barred subsequent action against individual alleged to be corporation's

22   alter ego); Bernhard v. Bank of America, 19 Cal.2d 807, 812-813 (1942) (recognizing the rule in

23   dictum)).

24                          *       *       *

25   Based on the above, this Court holds that Lane's § 1983 claims against Defendants are

26   barred by res judicata.[3] Accordingly, his claims are dismissed with prejudice.

27   _____

28   [3] Because the Court holds that Lane's claims are barred by res judicata, it need not address
     Defendants' other arguments in support of dismissing his § 1983 claims. The other arguments,
     however, appear to be meritorious.

**United States District Court**
For the Northern District of California

B.  <u>Supplemental Jurisdiction Should Not Be Granted with Respect to Lane's State Law Claims</u>

Although a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," <u>id</u>. § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966); <u>see also</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."). Because Lane does not state a viable federal claim, the Court declines to exercise supplemental jurisdiction over his state law claims.

**CONCLUSION**

Based on the foregoing, Defendants' motion is GRANTED. Lane's § 1983 claims are barred by res judicata. The Court declines to exercise supplemental jurisdiction over Lane's remaining state law claims. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: April 28, 2011

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C10-05779 HRL** Notice will be electronically mailed to:

D. Gregory Valenza          gvalenza@shawvalenza.com, cangel@shawvalenza.com

**Notice will be provided by other means to:**

Richard R. Lane
1266 Sandia Avenue
Sunnyvale, CA 94089

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**